UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MILGARD MANUFACTURING, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY, an Illinois surplus lines carrier; et al,<br><br>Defendants. | CASE NO. C10-5943 RJB<br><br>ORDER DENYING ILLINOIS UNION INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CHOICE OF LAW AND FOR CHANGE OF VENUE |

This matter comes before the Court on Defendant Illinois Union Insurance Company's (IUIC) motion for partial summary judgment for a determination that Oregon law governs this lawsuit filed by Plaintiff Milgard Manufacturing, Inc. (Milgard). Dkt. 50 pp. 2. IUIC seeks dismissal of Milgard's causes of action under Washington law and a transfer of venue to the United States District Court for the District of Oregon to better accommodate the majority of witnesses and evidence located in Oregon. *Id*. The Court has considered the pleadings in support of and in opposition to the motion and the file herein.

## PROCEDURAL HISTORY AND RELEVANT FACTS

Milgard is a window and door manufacturing company, in corporated in Washington State and headquartered in Tacoma, Washington. Dkt. 61 pp. 2. Milgard sells windows and doors all over the country and even, to a limited extent, internationally. *Id*., at pp. 4. Milgard began manufacturing windows at its Tacoma manufacturing facility in 1962. *Id*., at pp. 2. Milgard is a "vertically integrated" window manufacturer, meaning that Milgard makes its own insulated glass units, its own fiberglass frames, and its own vinyl components. *Id*. The Milgard vinyl plant, which is also located in Tacoma, began extruding window frames in 1988. *Id*. Although Milgard has "owned, rented, or controlled" property in Oregon, the windows at issue were designed in Tacoma, Washington, and the vinyl frames at issue were extruded in Tacoma. Dkt. 61 pp. 5. Dkt. 62 pp. 1-2; Dkt. 61 pp. 7.

From January to May of 1999, Milgard supplied "Co-Ex" vinyl windows to Baugh Construction Oregon, Inc. (Baugh), to be used in three commercial buildings in Hillsboro, Oregon, known as the Orenco Station Town Center, Buildings 262, 263, and 264. Dkt. 61 pp. 5. In 1999, all vinyl frames for Milgard "Co-Ex" windows were manufactured at Milgard's Tacoma Extrusion House. Dkt. 62 pp. 1-2. Milgard did not install the windows. Dkt. 57-1 pp. 3.

In September 2009, Baugh sued Milgard and other subcontractors in the Circuit Court of the State of Oregon, County of Washington. Dkt. 57-3 pp. 2-15 (Baugh Complaint). The Baugh Complaint included strict products liability and breach of implied warranty of fitness for a particular purpose claims against Milgard alleging: (a) the manufactured windows were in a defective condition causing water intrusion damages to the wall cavities and interior of the buildings; (b) the windows' and doors' vinyl frames contained insufficient flange support; (c) the

windows and doors were designed in a dangerously defective condition; and (d) Milgard failed to warn of these conditions. *Id.*

In October 2009, the Orenco Station Town Center developer, Pacific Realty, sued Baugh and its successor, Associated Masonry Restoration, Inc. dba Pardue Restoration, and Milgard for breach of express warranty, products liability, breach of contract, negligence, and common law indemnity in the Circuit Court of the State of Oregon, County of Washington. Dkt. 57-4 pp. 2-15. (Pacific Realty Complaint). The Baugh and Pacific Realty cases were consolidated under a Second Amended Complaint. Dkt. 57-2 pp. 2-23.

Milgard has four insurance policies at issue in the underlying litigation. Each of these four policies was negotiated and purchased by Milgard in Washington State, and delivered to Milgard in Washington State, with Milgard listed as the named insured at its Tacoma, Washington headquarters. Dkt. 61 pp. 2; Dkt. 63 pp. 1-3. Milgard used a Tacoma independent insurance agent, Bratrud Middleton Insurance, to locate and place the policies. *Id.* Milgard also paid all the premiums for each of these policies from its Tacoma headquarters. Id. Milgard's Director of Risk Management Ray Faccenda, who works in Tacoma, served as the primary Milgard contact point for claims under each of these policies. Dkt. 61 pp. 5.

Milgard purchased a commercial liability "surplus lines" insurance policy from IUIC that was effective from December 31, 2001 to December 31, 2002 (IUIC Policy). Dkt. 61-1 pp. 1-9. IUIC is an Illinois corporation with its principal place of business in Chicago, Illinois. *Id.* The IUIC Policy contains no choice of law clause or state-specific forms. Dkt. 50 pp. 4; Dkt. 61-1 pp.1-43.

Following the filing of the underlying case, Milgard's defense counsel provided its carriers with information and status reports on the case. Dkt. 57-5 pp. 1-4. Another insurer,

Admiral, agreed to pay some of Milgard's defense expenses. Dkt. 60-6 pp. 1-5. In the Fall of 2010, the first of two primary general liability policies issued by Admiral was exhausted and the second became impaired. *Id.*

In a November 4, 2010 letter, written by IUIC Claims Specialist Etta Litterini (Litterini), IUIC disclaimed any responsibility for defense or indemnity for alleged property damage arising from defective windows at Orenco Station. Dkt. 60-9 pp.2.

On December 8, 2010, defense counsel in the Underlying Orenco Action sent an email to all carrier representatives, including IUIC, attaching a Court Order requiring all carriers to attend an upcoming December 15, 2010 Mandatory Settlement Conference. Dkt.60-7 pp. 3-7. Milgard's coverage counsel also sent an e-mail to Litterini attaching the Court Order and reminding her that her presence at the MSC was required. Dkt. 60-8 pp. 2-3. On December 13, 2010, Milgard's coverage counsel sent Litterini a detailed letter explaining the inaccuracies and lack of merit in IUIC's coverage position and again reiterating the need for Litterini's appearance at the MSC. Dkt. 60-9 pp. 2-28. Standing by its denial of coverage, IUIC declined to attend the Mandatory Settlement Conference. Dkt. 60-11 pp. 2.

The underlying action was not resolved in the Mandatory Settlement Conference, and Milgard continued settlement discussions, ultimately reaching a settlement in January 11, 2011. Dkt. 61 pp. 6.

On December 23, 2010, Milgard filed a Complaint against IUIC stating claims for breach of contract, declaratory judgment, bad faith, and violation of the Washington Consumer Protection Act. Dkt. 1. In February 2011, Milgard amended its Complaint to add its excess liability insurers to its claim for declaratory relief only, and to add a claim against IUIC under the Insurance Fair Conduct Act. Dkt. 17.

IUIC filed the motion for partial summary judgment, contending that Oregon law applies to the claims asserted against IUIC, requiring the dismissal of the Washington state law claims. Dkt. 50. IUIC also request a change in venue to the District of Oregon to better accommodate witnesses and the evidence. *Id*.

**SUMMARY JUDGMENT STANDARDS**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at

trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## CHOICE OF LAW

**Actual Conflict**

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co.*, 721 F.Supp.2d 1007, 1013 (W.D. Wash. 2010). Under Washington law, when parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before the court will engage in a conflict-of-laws analysis. *Tilden-Coil Constructors, Inc.* at 1012-13; *Erwin v. Cotter Health Ctrs.,* 161 Wn.2d 676, 167 P.3d 1112, 1120 (2007). An actual conflict exists when the result of the issues are different under the law of the two states. *Seizer v. Sessions*, 132 Wn.2d 642, 648, 940 P.2d 261 (1997). Absent an actual conflict, Washington law presumptively applies. *Erwin v. Cotter Health Ctrs.,* 161 Wn.2d 676, 692, 167 P.3d 1112 (2007). In addition, Washington follows the rule of dépeçage, which may require the Court to apply the law of one forum to one issue, while applying the law of a different forum to another issue in the same case. *Brewer v. Dodson Aviation,* 447 F.Supp.2d 1166, 1175 (W.D. Wash. 2006). IUIC bears the burden of proving the existence of a conflict of law. *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London,* 735 F.Supp.2d 1231, 1234 (E.D. Wash. 2010).

Under the rule of dépeçage, the Court must separately determine whether there is an actual conflict between Washington and Oregon law on Milgard's claims for (1) breach of

contract; (2) declaratory judgment; (3) bad faith; (4) violation of the Washington Consumer Protection Act (CPA); (5) violation of the Washington Insurance Fair Conduct Act (IFCA); and (6) entitlement to an award of attorney fees.

IUIC has not carried the burden of establishing that an actual conflict exists with respect to the declaratory relief and contract claims. Other than the claim of coverage by estoppel, the asserted distinctions appear to be immaterial and do not rise to an actual conflict. However, to the extent the contract and/or declaratory judgment causes of action seek coverage by estoppel, an actual conflict exists between Oregon and Washington law. Under Washington law, an insurer that acts in bad faith may be "estopped from denying coverage, even where an otherwise good policy defense exists." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 393, 823 P.2d 499 (1992). By contrast, there is no "coverage by estoppel" that would preclude an insurer from relying upon coverage defenses under Oregon law. See *Northwest Pump & Equip. Co. v. American States Ins. Co.*, 144 Or. App. 222, 227, 925 P.2d 1241 (1996).

Washington law prohibits insurers from refusing to defend in bad faith and provides the insured a cause of action in tort for bad faith denial of the duty to defend. Under Oregon law, an insurer's refusal to defend does not give rise to a tort claim for bad faith. See *Warren v. Farmers Ins. Co. of Or.,* 115 Or. App. 319, 326, 838 P.2d 620 (1992). Accordingly, there is an actual conflict between the laws of Washington and Oregon on Milgard's bad faith claim.

Violations of Washington's insurance regulations, such as the violations alleged in Milgard's complaint, constitute per se unfair or deceptive trade practices under the CPA. See *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 394, 715 P.2d 1133 (1986). Conversely, under Oregon's CPA equivalent, the Unfair Trade Practices Act (UTPA), matters relating to

insurance are expressly excluded from unfair trade practices. ORS § 646.605(6). As such, there is an actual conflict between Washington and Oregon law on Milgard's CPA claim.

Milgard's IFCA claim is predicated on IUIC's alleged bad faith refusal to accept the tender of defense of the underlying litigation. In Oregon, the most analogous statute to Washington's IFCA is the Oregon Unfair Claims Settlement Practices Act (UCSPA). Like the IFCA and its implementing regulations, the UCSPA prohibits a variety of unfair trade practices. However, although the IFCA creates a private cause of action for an insurer's unfair trade practices, see RCW 48.30.015(1), the UCSPA does not. *Richardson v. Guardian Life Ins. Co. of Am.*, 161 Or. App. 615, 623–24, 984 P.2d 917 (1999). There exists an actual conflict in respect to the IFCA claim.

Washington provides for an award of attorney fees when an insured is compelled to assume the burden of legal action to obtain the benefit of its insurance contract. See *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wash.2d 37, 54, 811 P.2d 673 (1991). By contrast, in Oregon, attorney fees are only available to an insured that succeeds in a coverage action. See ORS 742.061. An actual conflict exists in respect to attorney fee awards.

**Most Significant Relationship**

If an actual conflict exists but the parties did not select the law to govern the issue, the court will determine the controlling law under the "most significant relationship" test. *Tilden-Coil Constructors, Inc.*, at 1013; *Erwin,* at 1120–21. Washington courts follow Restatement (Second) Conflict of Laws (1971) § 188 to determine the controlling law for contract claims, *Tilden-Coil Constructors, Inc.*, at 1013; *Mulcahy v. Farmers Ins. Co. of Wash.,* 152 Wn.2d 92, 95 P.3d 313, 317 (2004), and Restatement (Second) Conflict of Laws (1971) § 145 for tort and

CPA claims, *Tilden-Coil Constructors, Inc.*, at 1013; *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 875 P.2d 1213, 1217 (1994).

IUIC makes the argument that a different Restatement provision, Restatement (Second) of Conflict of Laws § 193, should control and would treat the site of the insured risk, Oregon, as a controlling factor in the choice-of-law determination. IUIC also argues that Oregon law should apply even under the test of Section 188.

Section 188 is a general choice-of-law test for use when a contract contains no choice-of-law provision. It is a multi-factored test for assessing the contacts a state has with the parties and the underlying events in a case. Section 193 is a more specific choice-of-law provision that addresses "contracts of fire, surety or casualty insurance" and treats the principal location of the insured risk as the most important factor in the choice-of-law determination. See *Fluke Corp. v. Hartford Acc. & Indem. Co.*, 145 Wn.2d 137, 149-51, 34 P.3d 809 (2001).

Section 193 provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law ***of the state which the parties understood was to be the principal location of the insured risk*** during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

(emphasis added)

Comment a, Restatement (Second) of Conflict of Laws § 193 states that in cases where "there may be no principal location of the insured risk ... the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of § 188." This includes risks that are scattered throughout two or more states. Restatement (Second) of Conflict of Laws § 193 Comment b. Comment f however, instructs that when a multiple-risk

policy incorporates the statutory forms from several states, courts may elect to treat the single, multiple-risk policy as though it were a collection of separate, single-risk policies, each governed by the law of a different state. See Restatement (Second) of Conflict of Laws § 193, Comment f.

Section 193 presumes that at the "time of contracting, the risks could be localized in particular states." *Fluke Corp. v. Hartford Acc. & Indem. Co*., 145 Wn.2d 137, 150-51, 34 P.3d 809 (2001). Where at the time of contracting, the location of the risks is "unidentifiable," there is no reason to apply Section 193 to the choice of law dispute. *Id*. Where there are multiple principal locations of risk under the insurance policy, Section 193 does not control. *Canron, Inc. v. Federal Ins. Co*., 82 Wn.App. 480, 494, fn 7, 918 P.2d 937 (1996).

The insurance policy in the present case is a multiple-risk policy with multiple coverage areas and without a choice-of-law provision. With multiple-risk insurance policies, there often will be no principal location for the insured risk. In such circumstances, the general, multi-factored test of Section 188, rather than the site-specific test of Section 193, typically controls. Milgard conducts business in several states and nothing in the policy indicates that the parties anticipated Oregon would be the primary location of the insured risks.

In arguing that there was a primary location for the insured risk and that the site-specific test of Section 193 should apply, IUIC urges the Court to treat each one of the underlying Milgard contracts as a separately insured risk, each setting forth a clearly defined location for a primary insured risk. In making this argument, IUIC points out that Milgard listed an Oregon business address in Endorsement 18 "Schedule of Locations." Dkt. 61-1 pp. 28-29; Dkt. 50 pp. 3. IUIC appears to argue that because Milgard has listed an Oregon business address in the Schedule of Locations, it necessarily knew at the time of issuance of insurance coverage that the risks associated with the Orenco Station Town Center project were located in Oregon.

The Court agrees with the response of Milgard that Endorsement 18 does not identify locations of the insured risks. The locations identified in the endorsement lists properties that are owned, rented, or controlled by the insured for the purposes of the owned, rented, or controlled property exclusion. The Orenco Station Town Center is not such a property and is not listed. The fact that Milgard owned, rented, or controlled property in Oregon has no bearing on whether the location of the risks associated with the Orenco Station Town Center project were anticipated to be Oregon at the time of issuance of the insurance coverage. There was no single principal location for the insured risk under the IUCI policy such that the general test of Section 188 rather than the site-specific test of Section 193 controls. Washington law requires the application of Section 188.

**Contract Claims**

Under Section 188, the "rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6." Restatement (Second) of Conflict of Laws § 188(1). Section 188 directs the court to focus on five contacts to determine the state with the most significant relationship to the transaction and the parties: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id*. § 188(2). The approach is not to count contacts, but rather to consider which contacts are most significant and to determine where those contacts are found. *Baffin Land Corp. v. Monticello Motor Inn, Inc*., 70 Wash.2d 893, 425 P.2d 623, 628 (1967).

Section 6 states that the factors relevant to choosing the applicable law include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; and (f) certainty, predictability, and uniformity of result. Restatement (Second) of Conflict of Laws § 6(2).

Here, Milgard, a Washington corporation with its principal place of business in Washington, negotiated and purchased the IUIC policy in Washington through its Washington agent and Washington broker. IUIC, the other party to the contract, is domiciled not in Oregon, but in Illinois. IUIC apparently used an agent in California to underwrite the policy. Thus, the first, second, and fifth contacts support applying Washington law. The third and fourth contacts, place of performance and location of the contract's subject matter, are less significant. The place of performance under the insurance contract was uncertain at the time of contracting. Milgard constructs its windows in Washington and delivers them throughout the United States for installation. Allegations of defects, i.e. that the vinyl warped, relates to the design and manufacturing that occurred in Washington. Similarly, the location of the policy's subject matter was not fixed, as it would have been with a policy that insures against a localized risk. See Restatement § 188 Comment. e (place of performance can bear little weight if uncertain or unknown; situs of subject matter is significant for contracts that protect against localized risks). Having evaluated these contacts in light of the principles of Restatement section 6, the court concludes that Washington has the most significant relationship to the parties and the insurance contract, and that Washington law therefore governs the parties' contractual claims. The state of Washington has a strong interest in protecting insureds that must resort to litigation to establish

coverage. *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co.*, 721 F.Supp.2d 1007, (W.D. Wash. 2010); .*Axess Int'l Ltd. v. Intercargo Ins. Co.*, 107 Wn.App. 713, 30 P.3d 1, 8 (2001). Washington's interest particularly outweighs Oregon's interest here, where neither of the parties to the policy is a Oregon citizen. Furthermore, applying Washington law is consistent with the justified expectations of the parties: Milgard's policy was negotiated and purchased in Washington to cover risks associated with its widow manufacturing, which was performed in Washington. The parties would, therefore, justifiably expect Washington law to govern their rights and obligations under the insurance contract. See *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co.*, 721 F.Supp.2d 1007, 1015 (W.D. Wash. 2010)(Although injury and underlying suit occurred in California, applying Washington law was consistent with parties' expectations as policy was negotiated and purchased in Washington to cover risks associated manufacturing that occurred in Washington). For these reasons, the Court concludes that Washington law governs the contract claims.

**Tort and CPA Claims**

Washington courts follow Restatement (Second) of Conflict of Laws § 145 to determine which state's law governs tort and CPA claims. *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co.*, 721 F.Supp.2d 1007, 1016 (W.D. Wash. 2010); *Rice v. Dow Chem. Co.*, 124 Wash.2d 205, 213, 875 P.2d 1213 (1994). Section 145 directs the court to determine the state with the most significant relationship to the occurrence and the parties under the general principles stated in Restatement Section 6. Restatement (Second) of Conflict of Laws § 145(1). In doing so, the court should take into account the following four contacts: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the

place where the relationship, if any, between the parties is centered. *Id*. § 145(2). These contacts must be evaluated according to their relative importance with respect to the issue at hand. The most important factors for tort claims are the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and ease in the determination and application of the law to be applied. *Tilden-Coil Constructors, Inc.*, at 1016.

The tort claims arise out of IUIC's duties to Milgard under the contract of insurance. As discussed above, Washington has the most significant relationship to that policy and to the rights and obligations that it created. The policy implications of the choice of law for Milgard's tort claims are consistent with the analysis for the choice of law of the contract claims. The location of the parties also favors Washington over Oregon. Milgard, the allegedly injured party, is incorporated in Washington and has its principal place of business in Washington, whereas IUIC is located in Illinois, not Oregon. That the underlying suit was brought in Oregon does not change the greater significance of the location of the insured's manufacturing facility and the place of purchase of the policy of insurance. See *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co*., 721 F.Supp.2d 1007, 1016 (W.D. Wash. 2010).

The Court concludes that Washington has the most significant relationship to the occurrence and to the parties and that Washington law will apply to the tort and CPA claims.

**Attorneys Fee Claim**

The claims for attorneys fees sounds both in contract and tort. The Court having analyzed the relevant factors governing the choice of law finds that Washington law applies to Milgard's claim for an award of fees.

The Court concludes that Washington law applies to Plaintiff's causes of action and Defendant's motion to dismiss these claims should be denied.

**MOTION TO TRANSFER VENUE**

IUIC requests that this Court transfer this action to the Federal District Court of Oregon.

A district court, "for the convenience of parties and witnesses, in the interest of justice, ... may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether a transfer of venue is appropriate in a given case, courts may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498-99 (9th Cir. 2000). Courts also consider as significant factors the presence of a forum selection clause and the public policy of the forum state, if any. *Id*. at 499. The burden is on the moving party to establish that transfer is appropriate. *Costco Wholesale Corp. v. Liberty Mutual Life Ins. Co*., 472 F. Supp. 2d 1183, 1189 (S.D. Cal. 2007). The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986).

There is no dispute that this coverage lawsuit could have been filed in United States District Court for the District of Oregon. Therefore, the only remaining issues are whether litigation in Oregon would be more convenient for the parties and witnesses, and would also serve the interest of justice.

Considering the *Jones* factors, IUIC has not satisfied its burden of making a strong showing that convenience and justice favor transfer. The majority of the factors either favors Milgard or equally favors both parties. The first factor supports Milgard, because the insurance policy was entered into in Washington and Milgard is domiciled in Washington. IUIC is domiciled in Illinois. Although this Court is presumably more familiar with the governing Washington law than the District of Oregon, this factor is of lessened significance because the District of Oregon is well capable of applying Washington law. The third factor supports Milgard because it chose Washington as the forum in which to bring the claim, and there is generally a strong presumption in favor of honoring a plaintiff's choice of forum. As discussed above, both Milgard and IUIC have contacts with Washington and Oregon, but the contacts relating to Milgard's cause of action are in primarily in Washington, so these factors support retaining jurisdiction. Finally, IUIC has not met its burden of showing why the final three factors - the differences in the costs of litigation in the two forums, the availability of compulsory process to compel attendance of witnesses, and the ease of access to sources of proof - weigh in its favor. While the witnesses to the negotiation of the insurance policy, and the coverage and defense issues, are primarily in Washington and Illinois, the underlying litigation occurred in Oregon. That the underlying litigation occurred in Oregon is not a sufficient factor to warrant transfer. The causes of action in the present action, breach of duty to defend and indemnify, raise separate legal issues than those in the underlying litigation. See *Costco Wholesale Corp. v. Liberty Mutual Life Ins*. Co., 472 F. Supp. 2d 1183, 1192 (S.D. Cal. 2007); *Home Indem. Co. v. Stimson Lumber Co*., 229 F. Supp. 2d 1075, 1084 (D. Or. 2001). Further, to the extent some witnesses may be domiciled in Oregon, its proximity to this Court tends to lessen the persuasiveness of this factor. *Stimson Lumber Co*., at 1083.

In sum, IUIC has failed to show why convenience and the interests of justice favor transfer to Oregon. The motion to transfer will be denied.

**CONCLUSION**

The Court, having considered the motions, responses, replies, and the relevant documents herein, finds that Washington law applies to Plaintiff's causes of action. Defendant is not entitled to summary judgment dismissal of Plaintiff's Washington law claims. Venue is proper in this Court and Defendant's motion to transfer is denied. Therefore, it is hereby **ORDERED** that:

Defendant Illinois Union Insurance Company's Motion for Partial Summary Judgment Re: Choice of Law and for Change of Venue (Dkt. 50) is **DENED.**

Dated this 1st day of August, 2011.

*(signature)*
ROBERT J. BRYAN
United States District Judge